April 10,
1925.

Opinion of the Justices.

A requirement that indemnity insurance must be obtained as a prerequisite to obtaining a permit for the operation of a motor vehicle upon the public highways is within the constitutional powers of the legislature.

A statute requiring certain owners of automobiles to furnish indemnity insurance while permitting others to obtain permits upon satisfactory proof of their personal pecuniary responsibility is of doubtful constitutionality.

A requirement of indemnity insurance must be made applicable to those applying for three months' registration, or for leave to operate under the zone privilege, as well as to those applying for general permits. Whether it would be permissible to allow non-resident cars to operate for a limited period without insurance or other guaranty of responsibility is a doubtful question, upon which advice cannot be given without more extended examination than is now possible.

The requirement of indemnity insurance from automobile owners moving in interstate commerce is a proper exercise of the police power of the state, and does not constitute an unlawful burden on interstate commerce.

On March 24, 1925, the Senate adopted the following resolution:

*Resolved,* that the Senate request the opinion of the Supreme Court as to the constitutionality of compulsory insurance against liability for damages incurred in the operation of automobiles on the public highways, as provided for in House Bill No. 4, now pending in the Senate, An act relating to the registration of motor vehicles; For the protection of the public safety by providing as a prerequisite to the registration of motor vehicles, for the establishment (including the continuance during the period of registration) of financial responsibility by owners thereof for injury, including death resulting therefrom, to persons or damage to property caused by, or as the result of, the negligent use, maintenance or operation of such motor vehicles; conferring powers and imposing duties upon the Commissioner of Motor Vehicles and his agents in connection therewith, and for the enforcement thereof; imposing certain duties upon owners of motor vehicles and upon insurance companies, associations and exchanges, issuing policies and contracts to motor vehicle owners and providing penalties.

The following answer was returned:

*To the Honorable Senate:*

The undersigned, justices of the supreme court, having received your communication requiring their opinions upon the validity of the provisions of House Bill No. 4, now pending before your honorable body, and relating to a requirement that indemnity insurance must be obtained in certain instances as a prerequisite to obtaining a permit for the operation of a motor vehicle upon the public highways, make answer as follows:

The inquiry relates to the legislative power to provide that an applicant for registration for a motor vehicle shall establish the collectibility of judgments which may be rendered against him for damages caused by the operation of the vehicle in question; and as to the validity of certain limitations upon the method by which such fact may be established.

The proposed act is designed to regulate the use of public highways. It relates to a matter over which the legislature has full power, subject only to the limitations of reasonableness and equality. *State* v. *Aldrich*, 70 N. H. 391. Power to act upon the subject can also be predicated upon the right to provide for the public safety by the reasonable regulation of undertakings that are inherently dangerous.

While the most common form of such regulation is by the prohibition of certain acts, or prescribing modes of action, the power is not limited to such legislation. In addition to measures calculated to protect from injury, there may also be provisions tending to facilitate obtaining recompense for injuries that are inflicted. Legislation of the latter class has been upheld in this state. The employers' liability law takes from employers engaged in certain lines of hazardous business the benefit of the defence of assumption of risk by the employee. Laws 1911, *c.* 163, *s.* 2. This provision does not exceed the legislative power. *Wheeler* v. *Contoocook Mills*, 77 N. H. 551, 554, and cases cited. A provision that a lightning-rod agent must maintain a residence within the state is valid, as a means to "render him amenable to the powers of, and bring him within the jurisdiction of the courts of the state." *State* v. *Stevens*, 78 N. H. 268, 276.

So also the provision of Laws 1911, *c.* 133, *s.* 20, requiring the operator of a motor vehicle who knows he has caused injury to stop and give information, plainly relates to facilitating a recovery for injuries done. In upholding the validity of this provision it was said "that the operation of an automobile upon the public highways

is not a right but only a privilege which the state may grant or withhold at pleasure (*Commonwealth* v. *Kingsbury*, 199 Mass. 542); and that what the state may withhold, it may grant upon condition." *State* v. *Sterrin*, 78 N. H. 220, 222.

As the legislature may provide that the defendant must remain within the state so as to be answerable to process, or must furnish evidence of his identity after a wrong has been done, it may also provide means by which the plaintiff's recovery shall be a thing of substance, rather than mere form. There is no difference in principle between taking away means of evading a judgment and providing against deficiencies which would prevent the collection of an execution.

Provisions requiring those causing the operation of motor vehicles, or certain classes of them, to furnish security for the benefit of any person who may be injured through faulty operation, have been enacted in many states; and the decisions are uniform in upholding the power to prescribe such regulations. *Commonwealth* v. *Slocum*, 230 Mass. 180; *People* v. *Kastings*, 307 Ill. 92; *Ex Parte Cardinal*, 170 Cal. 519; *Jitney Bus Association* v. *City of Wilkes-Barre*, 256 Pa. 463; *West* v. *City of Asbury Park*, 89 N. J. L. 402; *State* v. *Seattle*, *&c. Company*, 90 Wash. 416; *City of Memphis* v. *State*, 133 Tenn. 83; *City of New Orleans* v. *Le Blanc*, 139 La. 113; *Willis* v. *City of Fort Smith*, 121 Ark. 606; *Hazleton* v. *City of Atlanta*, 144 Ga. 775; *Ex Parte Dickey*, 76 W. Va. 576; *Packard* v. *Banton*, 264 U. S. 140.

A general provision that a motor vehicle may be operated upon the public highways only when adequate provision has been made for compensation to persons injured because of fault in such operation, is a valid law.

The other branch of the question relates to the requirements of indemnity insurance under some circumstances and not under others. The provisions of the bill are, in substance, that if the applicant shows that he has sufficient property he may be granted a permit, or he may have a permit if he obtains indemnity insurance. No other form for assuring accountability is provided for; and the question arises whether the failure to allow the applicant to file a bond with proper sureties constitutes an unwarranted distinction. A closely related question has arisen under statutes or ordinances requiring a bond executed by a surety company, and excluding one executed by individual sureties. It has been decided in some states that this is a reasonable discrimination. *Ex Parte Cardinal*, 170 Cal. 519; *State* v. *Seattle &c. Company*, 90 Wash. 418. In another

state it was held to be so unreasonable as to make an ordinance invalid.  *Jitney Bus Association* v. *City of Wilkes-Barre*, 256 Pa. 462. In one jurisdiction the decision by a divided court first disallowed the discrimination, but upheld it upon a rehearing.  *City of New Orleans* v. *Le Blanc*, 139 La. 113.  In still another state an ordinance was held invalid because the restrictions as to a bond with individual sureties were found to be unequal and unreasonable.  *People* v. *Kastings*, 307 Ill. 92.

It is manifest that there are practical reasons why an obligation secured by the liability of a corporation whose continued solvency and accountability are provided for by state regulation and supervision is preferable to one secured only by individuals as sureties.   It is our opinion that a general provision requiring the former and excluding the latter is a proper exercise of legislative discretion.

But although a surety company bond or policy of indemnity insurance may be required of all, to the exclusion of personal security, the present difficulty is not disposed of.  The question here relates to a provision that individual responsibility shall be accepted in certain cases and not in others.  It involves more than the mere power to prescribe a corporate surety, to the exclusion of individual responsibility.  The distinction in the bill is that between individual accountability in one instance and corporate responsibility in another.  The provisions cannot be sustained upon the ground that a requirement of corporate responsibility is reasonable, for the act recognizes and permits personal accountability in some cases.  This being made acceptable in some instances, no reason is apparent why it should not be so in all cases.  If the impecunious applicant can secure the pledge of the accountability of his wealthy friend, he offers substantially the same security as his opulent neighbor.  It may well be claimed that under such circumstances he should be relieved from the burden of paying an insurance premium.  Denial of the right to qualify in this way seems to be a plain discrimination. Whether it can be sustained is a grave question, which ought not to be passed upon without mature consideration.  It is assumed that an early answer to your inquiry must be made, if it is to be of any value to you.  It may be that the proposed law could be sustained; but the time available for the consideration of the question involved is insufficient for us to arrive at a satisfactory solution of the problem.

In this connection we call attention to the frequently repeated

caution that these opinions are merely advisory, and are not to be treated as judicial decisions upon the questions propounded. *Williams* v. *State, ante* 341. If, upon such consideration as it is possible to give to the matter, we should advise that the bill in its present form could be sustained, we should not feel bound by that expression of opinion if, in subsequent litigation and upon fuller examination of the question, we should become convinced that the advice given was erroneous.

While it is not our province to advise your honorable body as to the expediency of legislation, we deem it proper to call to your attention possible constitutional defects in proposed laws, submitted by you for our opinions thereon, and to the practicability of avoiding doubtful questions which we are unable to answer in the time at our disposal. *Opinion of the Justices,* 58 N. H. 623, 625. An added provision that accountability may be established by filing a bond in the amounts specified in the act, with corporate or individual sureties, to the satisfaction of the commissioner, will remove all objection upon this particular ground.

Such a provision would obviate the apparently substantial objection that one applicant could, while another could not, avoid the expense of procuring a policy of insurance. The idea sought to be made law is, apparently, that the collectibility of a judgment shall be reasonably assured in every case. This assurance is required of all. With an amendment as above suggested, the requirement would be a general one and within the legislative power.

The fallacy in the argument that the law would then be unequal, in the constitutional sense, lies in the failure to distinguish between equality of opportunity and ability to take advantage of the opportunity which is offered to all. The equality of the constitution is "the equality of right and not of enjoyment. A law that confers equal rights upon all citizens of the state, or subjects them to equal burdens . . . is an equal law." *State* v. *Griffin,* 69 N. H. 1, 30; *State* v. *Dow,* 70 N. H. 286; *Thompson* v. *Kidder,* 74 N. H. 89.

Stress is laid upon the provision of the bill that the property owner may be "exempted" from the provisions for giving security. But it is the substance rather than the form of legislation that determines its validity. The substance of the bill is that, having satisfied the commissioner of the collectibility of a judgment by proof of one available source of payment, the applicant need not provide another source. The statutory aim is security. It details

various means by which this may be supplied. The error consists in looking at the means, rather than the result. The result is common and applicable to all, though it may be attained by different means. The obligation is to furnish security. From that there is no exemption.

The provisions by which security is to be assured being available to every one, and being made to afford reasonable opportunity for compliance, will not be open to objection upon constitutional grounds in the aspects heretofore considered. The same result as to equality could also be attained by requiring the procurement of an indemnity insurance policy in every case.

Your inquiry is confined to the validity of the bill which you have under consideration, and makes no reference to other statutes, now in force. Argument was presented concerning the proposition that the provisions of the bill apparently do not apply to persons asking for a three months' permit (Laws 1923, c. 76, s. 1), or for leave to operate under the zone provision (Laws 1921, c. 119, s. 3), and clearly do not apply to those operating under the twenty day privilege granted to certain non-residents (Laws 1923, c. 76, s. 1). As you have not inquired concerning the power to retain these provisions, if the proposed law is enacted, we are in doubt as to whether our opinions on these matters were intended to be required. But in order that there may be no misunderstanding as to the extent to which this opinion goes, we add that it is our opinion that the law must be made applicable to those applying for the three months' registration, or for leave to operate under the zone privilege.

As to the discrimination which would be created by allowing non-resident cars to be operated for twenty days without a local permit and therefore without insurance or other guaranty of responsibility, a more difficult question is presented. We are unable to now advise you that such a law would be valid. Whether upon a more extended examination of the subject than can now be made the provision might be sustained is a question upon which we are in doubt.

Argument has been made that the proposed act is in conflict with the interstate commerce clause of the federal constitution. That the highways of the state are largely used in interstate commerce, both by resident and non-resident owners of motor vehicles, requires no discussion. It is matter of common knowledge. The state may not specially regulate such commerce, but at least until Congress has

acted, it may "prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles — those moving in interstate commerce as well as others. And to this end it may require the registration of such vehicles and the licensing of their drivers. . . . This is but an exercise of the police power uniformly recognized as belonging to the State and essential to the preservation of the health, safety and comfort of their citizens; and it does not constitute a direct and material burden on interstate commerce. The reasonableness of the State's action is always subject to inquiry insofar as it affects interstate commerce, and in that regard it is likewise subordinate to the will of Congress." *Hendrick* v. *Maryland,* 235 U. S. 610, 622, 623. In *Kane* v. *New Jersey,* 242 U. S. 160, a requirement for a nonresident owner to appoint a state official as agent to receive service of process in legal proceedings was held valid, the court saying: "We know that ability to enforce criminal and civil penalties for transgression is an aid to securing observance of laws. And in view of the speed of the automobile and the habits of men, we cannot say that the Legislature of New Jersey was unreasonable in believing that ability to establish, by legal proceedings within the state, any financial liability of non-resident owners, was essential to public safety."

It is our opinion that the proposed law is not in excess of the power of the state, as related to interstate commerce.

To sum up our conclusions: The basic idea of requiring security from those who operate motor vehicles upon the highways is one that may be put in force. Any law seeking this end must answer the constitutional requirements of reasonableness and equality. This result can be attained by requiring substantially like security from all who engage in such an undertaking. A requirement of corporate rather than individual security is valid; but if individual security is permitted, it is doubtful if the discrimination in that respect found in the proposed law could be sustained. Any classification of persons to whom the law applies must be based upon substantial reason. Such reason does not exist as to an inclusion of annual permits and the exclusion of those issued for a shorter period or for a limited area. It is doubtful if a law could be sustained if it required security from all those required to secure permits and exempted those allowed to operate without a permit.

For the reasons before stated, we respectfully ask to be excused from the further expression of opinion upon the bill as presented.

*Opinion of the Justices,* 70 N. H. 640, 642; *Opinion of the Justices,*
58 N. H. 623, 625.

ROBERT J. PEASLEE,
WILLIAM A. PLUMMER,
LESLIE P. SNOW,
JOHN E. ALLEN,
THOMAS L. MARBLE.

April 10, 1925.

*John J. Sheehan* (orally), for the bill.

*William N. Rogers* (orally), opposed.