MAY, Judge,
dissenting.
[21] Summary judgment as to Hoke was properly denied. I acknowledge the majority’s concern that “[determining an insurer’s liability only after an accident occurs and the status of the victim is ascertained creates the possibility of disparate treatment of similarly situated insurers,” (Op. at 63.) But the result the majority reaches in its effort to avoid “disparate treatment of similarly situated insurers” gives rise to a far greater concern—disparate treatment of innocent persons who are accident victims. As the majority result has the effect of depriving pedestrians, bicyclists, and other non-drivers of recovery that would remain available to motorists involved in traffic acci- " dents, I must respectfully dissent.
*65 [22] I agree with the majority, that the particular facts of this case present an issue of first impression in Indiana. But the majority’s narrow characterization of Indiana’s public policy is not required by our Indiana Supreme Court’s precedent and would lead to harsh and unfair outcomes, because it would result in protection .for drivers injured in motor vehicle accidents but would leave no remedy for pedestrians, bicyclists, or other persons who need not or cannot prove financial responsibility.
[23] Specifically, I would - decline to hold, as the majority appears to, that the well-established and almost universally-recognized public policy to protect innocent victims from financial loss by reason of the acts of irresponsible operators of motor vehicles applies only in “compulsory insurance” states but not in “compulsory financial responsibility” states like Indiana.[4] That surely is not a result our legislature intended would flow from the compulsory financial responsibility statutes.
[24] I am fully cognizant of the importance of public policy generally favoring the enforcement of contracts, and I acknowledge our Supreme Court’s statement on which the majority relies as its articulation of our public policy that “Indiana’s current financial responsibility scheme, like the prior one, demonstrates a policy to protect automobile owners ... from damages which [sic] might be inflicted on them by other cars out on the road.” Transamerica Ins. Co. v. Henry, 563 N.E.2d 1265, 1268 (Ind.1990) (emphasis added). That was an appropriate statement of policy in Henry, where tortfeasor and victim were both drivers, and I do not suggest automobile owners are undeserving of protection.
[25] But I would not attribute to our legislature a public policy that protects only accident victims who happen to be automobile owners or drivers, and leaves to fend for themselves' pedestrians, bicyclists, and other non-drivers who need not or cannot prove financial responsibility or who are otherwise not subject to the financial responsibility laws. As the majority correctly notes, our Indiana Supreme Court has not foreclosed a policy that would place non-drivers on an equal footing: “[w]e leave for another day whether a liability insurer can deny coverage when the third party does not have protection against uninsured motorists.” Colonial Penn Ins. Co. v. Guzorek, 690 N.E.2d 664, 672 (Ind.1997) .
*66 [26] I' believe a more useful statement of our public policy in this case is that “it is the policy of this state that persons who suffer loss due to the tragedy of automobile accidents shall have a source and means of recovery.” Am. Underwriters Grp., Inc. v. Williamson, 496 N.E.2d 807, 810 (Ind.Ct.App.1986), (disapproved on other grounds by Guzorek). This policy typically guides courts in other jurisdictions who face fact situations like ours, and I believe that analysis strikes a better balance between protection of insured motorists and that of accident victims who are not motorists.
[27] In McCarthy v. Motor Vehicle Acc. Indemnification Corp., 16 A.D.2d 35, 224 N.Y.S.2d 909, 921 (1962), aff'd, 12 N.Y.2d 922, 238 N.Y.S.2d 101, 188 N.E.2d 405 (1963), the Appellate Division surveyed the law in this area:
Many states have recognized the need to protect innocent victims from financial loss by reason of the acts of irresponsible operators of motor vehicles. Recent legislation has been enacted in several jurisdictions to remedy such situations and to fill the gaps which have existed. Despite differences in the various statutes a common thread runs .through all of them—that the perspective from which the problem must be considered is the interests of the victim and not the actor. Thus in Hartford Acc. & Indem. Co. v. Wolbarst, 95 N.H. 40, 43, 57 A.2d 151, 153 [(1948)], where the collision was deliberately or intentionally caused, the court stated as follows: “The purpose of the New Hampshire. Financial Responsibility Act was fundamentally to provide compensation for innocent persons who might be injured through ' faulty operation of motor vehicles.” In re Opinion of the Justices, 81 N.H. 566, 129 A. 117, 39 A.L.R. 1023 [(1925)].
. “Financial responsibility statutes have been passed in many states, and are in the process of preparation in still others, to secure the solvency of operators upon the highways of those states, and to guarantee their ability to discharge judgments arising out of accidents in which they might be involved * * *. The beneficiaries of such an act and of such a policy, when issued, are the members of the general public who may be injured in automobile accidents by such person; and the policies are generally construed with great liberality to accomplish their purpose.” 7 Appleman, Insurance Law and Practice, § 4295 [62, 63].
[28] It further noted liability insurance is coming to be regarded more as a device for providing funds to meet the needs of injured persons and less as a device for the protection of the insured. Id. at 922. Statutory recognition of this trend is manifested in financial responsibility laws, the purpose of which is to indemnify innocent third persons and to protect the general public from financially irresponsible motorists. Id. Since the basic purpose of the financial responsibility laws is not to afford financial protection to the insured, but ráthér to compensate his innocent victim, there is no reason why the victim’s rights should depend upon the motivation of the insured’s conduct. Id. Nor are the victim’s rights against the insurer derived through the insured. Id,
[29] Today we address the ■ question our Supreme Court explicitly left unresolved in Guzorek: whether a liability insurer can deny coverage when the third party does not have protection against uninsured motorists. I agree with the courts of other states that the perspective from which the financial responsibility question must be considered is the interest of the victim and not the actor, and that the purpose of the financial responsibility *67 laws is to indemnify innocent third persons and to protect the general public from financially irresponsible motorists.
[30] I cannot join the majority opinion to the extent it would, in order to protect insurance companies from perceived “disparate treatment,” deprive non-motorist accident victims of recovery that is available to accident victims who are motorists, and I must therefore respectfully dissent.

. I do not find the distinction between "compulsory financial responsibility” and "compulsory insurance” so significant that , it should serve to deprive innocent non-driver victims of motor vehicle accidents of a mechanism for recovery that is available to drivers. Courts have often used the terms interchange: ably, e.g., Dunn v. Safeco Ins. Co. of Am., 14 Kan.App.2d 732, 798 P.2d 955, 958 (1990): "[r]egardless of the reasoning used, all courts that have considered the question as it pertains to an innocent third party have held that an insurer cannot, on the ground of fraud or misrepresentation, retrospectively avoid coverage under a compulsory insurance or financial responsibility law so as to escape liability to an innocent third party.” (Emphasis added.)
The majority suggests "if May did not want to be subject to the exclusions at issue, he did not have to purchase a policy'of insurance. Instead, he could have posted a bond in the same minimum coverage amount he had insured himself for through Founders and he would have been subject to no .such restrictions.” (Op. at 62) (footnote omitted). It is a long-standing public policy that persons who suffer loss 'from automobile-accidents should ■have a source and means of. recovery. I would not place outside the scope of that policy those Hoosiers affluent enough to satisfy financial responsibility requirements with- • out buying insurance. An innocent victim’s ability to-recover should not depend on an automobile owner’s income level.