STORER v. OCEAN ACCIDENT & GUAR-
ANTEE CORPORATION, Limited, et al.
No. 6798.

Circuit Court of Appeals, Sixth Circuit.
Dec. 6, 1935.

Tom Stahl, of Fremont, Ohio (Stahl,
Stahl & Stahl, of Fremont, Ohio, on the
brief), for appellant.

R. O. Holloway, of Toledo, Ohio (Hol-
loway, Peppers & Romanoff, of Toledo,
Ohio, on the brief), for appellees.

Before MOORMAN, HICKS, and AL-
LEN, Circuit Judges.

HICKS, Circuit Judge.

Amelda Baechle (now Storer) recovered
a judgment in a common pleas court of
Ohio against Norman Strohl and Isadore
Lepley for damages for injuries received
by her in an automobile collision. The
judgment became final as to Strohl and re-
mained unsatisfied, whereupon appellant
brought this action under the provisions of
sections 9510—3 and 9510—4 of the Gen-
eral Code of Ohio against Strohl and the
Ocean Accident & Guarantee Corporation,
Limited (hereinafter called appellee), on an
insurance policy issued by it. The case
was transferred to the equity side of the
docket.

On June 9, 1929, appellant and Norman
Strohl went on a pleasure ride in a car
owned by Elmer J. Strohl, Norman's fa-
ther. The car was driven by Norman with
the permission and consent of his father.
While young Strohl was parked at a gaso-
line station he observed another car, driven
by Lepley, traveling west. In a short time
he followed it, overtaking it 3.7 miles from
the filling station. The collision occurred
as Strohl attempted to pass upon the left
side of Lepley's car.

In the policy appellee agreed, subject to
conditions therein contained, to pay all
sums for which the assured should become
liable as damages for personal bodily in-
juries caused as the result of the use of the
automobile. Under a provision of the pol-
icy, Norman Strohl was an "additional as-
sured," and it further provided that the as-
sured should co-operate with the insurance
company in all matters which the company
deemed necessary in the defense of any
suit. Appellee defended upon the ground
that Norman Strohl breached this condi-
tion of the policy not only in failing to co-
operate in the defense of the suit, but in
fraudulently colluding with appellant in its
commencement and prosecution.

Some time after the accident, appellant,
at the instance of Elmer J. Strohl, and ac-
companied by her father and mother, Nor-
man Strohl and Scott Wolf, an agent of
appellee, called at the office of Stahl, Stahl
& Stahl, attorneys, and discussed with them
the matter of making a claim against Lep-
ley. As a result of the conference, the at-
torneys advised that suit should be brought
not only against Lepley, but against Nor-
man Strohl also. Suit was instituted and

the basis of the claim was the combined and concurring negligence of Strohl in driving at an excessive rate of speed and of Lepley in turning to the left at the point of collision without extending his left hand or displaying his stop light.

Before the commencement of the suit Norman Strohl gave a written statement to appellee that at the time of the accident he was going at a rate of speed of 30 to 35 miles per hour. Appellee under its contract assumed the defense of Strohl, and while the first trial was in progress Strohl again represented to the attorneys furnished him that he was going at the above rate of speed. The significance of these statements is apparent when it is stated that under the statutes of Ohio, in effect at the time of the accident, a speed in excess of 35 miles per hour was prima facie evidence of negligence upon the part of Strohl. If he was not violating the statute, he had a substantial defense. After suit was brought, but before it was tried, Norman Strohl, who had previously been employed for a short time by Stahl, Stahl & Stahl, visited their office and discussed the case with one of the firm. About a week before the case was tried he went again to the office at the request of a member of the firm and answered questions then asked him concerning the accident. He never apprised appellee of these visits.

On the first day of the trial and before the afternoon recess appellant's attorneys, following statutory procedure in Ohio, called Norman Strohl for cross-examination and examined him, but not concerning the matter of speed. His testimony was not concluded before the recess. During the recess John Stahl, of counsel for appellant, went into a room near the court-room and while he was there Norman Strohl also entered the room, either voluntarily or by request of Stahl. The evidence is conflicting as to what occurred in this room. Strohl testified that Stahl motioned him to come in and suggested that he should testify that he was going from 40 to 45 miles an hour at the time of the accident and that any one would know that he was going faster than 35 miles an hour. This conversation between Stahl and Strohl was private and out of the presence of Strohl's attorneys, who were in the courtroom at the time. After the recess Strohl resumed the witness stand, his cross-examination was continued, and in reply to questions of appellant's counsel he testified that at the time of the accident he was going at a speed of between 35 and 40 miles per hour. He repeated this statement twice.

This testimony so directly contradicted his previous signed statement that his counsel naturally questioned him concerning it; whereupon he made an affidavit to the effect that John Stahl had insisted that he "change his story as to speed"; that, "He said for me to say I was going faster than thirty-five (35) miles per hour. When he called for me to testify on cross-examination, I testified that I was going thirty-five (35) to forty (40) miles per hour. My true speed was thirty (30) to thirty-five (35) miles per hour. If John Stahl wouldn't have got me to change my story I would have testified to the truth as to speed. I read this statement and it is true."

Thereupon, after adjournment for the day, Strohl and his attorney disclosed the entire matter to the trial judge, and on the next morning the attorney, by direction of the court, recalled Strohl, who then testified that he desired to correct his previous testimony with respect to speed, that he was only going from 30 to 35 miles per hour. He explained that the conversation with John Stahl during the afternoon recess had induced his previous testimony and he related that conversation substantially as it is above set forth and further testified that the facts contained in his affidavit were true. The affidavit was received in evidence, whereupon the court entered a mistrial.

Stahl at first made what is styled a "professional statement" to the court that Strohl came into the room voluntarily; that there was a general conversation touching his testimony, and that he stated to Strohl that his statement on the witness stand not only differed from the written statement made to appellant's attorneys from what he, Strohl, had told him in the office, but denied that he suggested to Strohl to testify to any particular thing or to change his testimony. Stahl was evidently confused in substantial portions of his statement, since Strohl had not up to that time given any testimony concerning speed. He testified at the hearing of the present controversy that Strohl came into the room, that something was said about his testimony, and that he, Stahl, remarked in substance that the jury would not be impressed with testimony that Strohl caught up with some one in 3½ miles when he was five to seven minutes behind him and going 35 miles an hour. He testified on cross-examination

that in his talk with Strohl he stated that if he, Strohl, stopped at the gas station five or ten minutes and Lepley was only going at the rate of 20 miles per hour the jury would not be impressed with testimony that he, Strohl, was traveling at the rate of 30 to 35 miles per hour.

Upon a second trial in the common pleas court, Strohl was again called by appellant for cross-examination and testified that 50 feet from the point of the collision he was going at the rate of 30 to 35 miles per hour. After appellant had rested her case, defendant Lepley called Strohl for cross-examination. He was shown his affidavit executed at the previous trial and stated that he had sworn therein that he had testified falsely in that trial; that he was in fact going between 30 and 35 miles per hour and that his former testimony that he was going 35 to 40 miles per hour was at the suggestion of John Stahl. Thereupon the affidavit was again offered in evidence by counsel for Lepley and was received.

The above narrative of the controlling facts is in substantial accord with the findings made by the District Court. The court sustained appellee's contention and dismissed the petition. We think the decree was right.

■ The co-operation clause was both material and important. Its purpose was twofold: (1) To require the insured to aid in preparing the case for trial and in making proper defense; and (2) to prevent collusion between the insured and a friendly claimant. "When the condition was broken, the policy was at an end, if the insurer so elected." Coleman v. New Amsterdam Cas. Co., 247 N.Y. 271, 160 N.E. 367, 369, 72 A.L.R. 1443. See, also, Royal Indemnity Co. v. Morris, 37 F.(2d) 90, 93 (C.C.A.9).

■ Whether Strohl failed to co-operate was to be determined by proper inferences to be drawn from the facts, and we think that the decided weight of the evidence, considered in the aggregate, is that he not only failed, but that he purposely intended through false testimony to aid appellant in recovering a judgment against himself, eventually to be paid by appellee. His friendly relationship with appellant, his private conferences with her attorneys, both before and at the first trial, and his repeated admissions under oath that he had testified falsely upon the first trial concerning the vital issue in the case, leave little room for any other conclusion. See Ocean Accident & Guarantee Corporation v. Lucas, 74 F.(2d) 115, 117, 98 A.L.R. 1461 (C.C.A.6); Ohrbach v. Preferred Accident Ins. Co. of New York, 227 App.Div. 311, 237 N.Y.S. 494; Solomon v. Preferred Accident Ins. Co. of New York, 132 Misc. 134, 229 N.Y. S. 257. It matters not whether the purpose originated in his own mind or was induced by another, the effect was the same—a breach in a condition of the policy. The overwhelming preponderance of the evidence is against any suggestion that Strohl's testimony to the effect that he was driving 35 or 40 miles per hour was truthful or that from lapse of memory or other cause he was honestly mistaken.

■ We may assume that Strohl testified truthfully upon the second trial, but the condition already broken was not thereby restored. Nor can it be said that appellee then had the benefit of the truth because Strohl was not only confronted with his own contradictory affidavit, but with his repeated confessions that he had sworn falsely upon the first trial, and the verdict indicated that his credibility was destroyed. It is manifest that Norman Strohl would be repulsed if he were seeking indemnity and appellant has acquired no higher right. Gen. Code of Ohio, §§ 9510-3 and 9510-4. Stacey v. Fidelity & Casualty Co. of New York, 114 Ohio St. 633, 641, 151 N.E. 718.

Other assignments of error have been considered, and, being found without merit, are overruled.

Decree affirmed.