HOME INDEMNITY CO. OF NEW YORK
v. STANDARD ACC. INS. CO. OF
DETROIT et al.

No. 11661.

Circuit Court of Appeals, Ninth Circuit.

May 11, 1948.

Rehearing Denied June 14, 1948.

920

See also 6. F.R.D. 218.

Thomas P. Menzies and Harold L. Watt, both of Los Angeles, Cal., for appellant.

Jones, Thompson & Kelly, of Los Angeles, Cal., for appellee Standard Acc. Ins. Co.

Lasher B. Gallagher, of Los Angeles, Cal., amicus curiae.

Before GARRECHT, DENMAN, and BONE, Circuit Judges.

GARRECHT, Circuit Judge.

The appellee insurance company, hereinafter referred to as "Standard", filed in the court below a complaint praying for a judgment declaring that it was not obligated to defend certain actions brought in the Superior Court of San Diego County, California, and that it had no liability to to pay any judgment that might be rendered therein until the appellant had fully paid and discharged its liability under a certain policy of automobile liability insurance issued by it.

### 1. The Insurance Policies

The appellant's policy was issued on November 30, 1945, and insured Walter Haggerty and the Northumberland Mining Company, jointly and severally, as their respective interests may appear, against bodily injury liability in the amount of $100,000 for each person and $300,000 for each accident, and property damage liability in the amount of $5,000, resulting from the operation of the company's 1942 Lincoln Zephyr sedan. It was that automobile which was involved in the accident that forms the basis of the present suit.

One paragraph of the policy contains the following definition:

"The unqualified word 'insured' * * * includes the named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured."

Another paragraph of the policy reads as follows:

"Assistance and Cooperation of the Insured

"The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate and surgical relief to others as shall be imperative at the time of the accident."

The policy also contains the following provision:

"Action Against company

"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy. * * * "

Standard's interest in any legal liability arising from the accident referred to, stems from the following facts:

Under an automobile liability policy effective from September 29, 1945, to September 29, 1946, Standard insured George White against bodily injury liability in the amount of $25,000 for one person or $50,000 for more than one person injured or killed in one accident, from the operation of a certain 1942 Packard automobile. That policy contains a provision that when the automobile covered by the policy is undergoing repairs, the insurance afforded by the policy applies to another automobile "used as the substitute" for the car that is being repaired.

Another paragraph in Standard's policy provides in part that, as to a "substitute automobile," the coverage "shall be excess insurance over any other valid and collectible insurance available to the insured."

The court found that when the accident occurred the Packard automobile, covered by Standard's policy, was under repair; that White was at that time driving the Lincoln Zephyr, covered by the appellant's policy, with the permission of the named insured under that policy; and that therefore White himself became "an assured under said policy."

Accordingly, Standard is endeavoring to fix the appellant's liability as the primary insurer, so that Standard itself may become only the excess insurer, under the provision in Standard's policy relative to "excess insurance over any other valid and collectible insurance available to the insured."

### 2. The Accident and Its Aftermath

The court found that on July 20, 1946, White, driving the Lincoln automobile mentioned above, ran into and collided with Claude McLester Lee and Leana Mae Osborne Lee, injuring them fatally. The evidence showed that the accident occurred at about 10:35 P.M., in Solano Beach, California, on Highway 101. One witness said that he heard the crash, and that when he first saw the bodies, immediately after the accident, they were about 60 or 80 feet from the point of impact, which he described as "awful". Another witness testified that she saw "the bodies flying through the air".

After the accident, White seemed to slow down his car but he did not stop. He was halted by a motorcycle policeman within the city limits of San Diego about 10 or 15 minutes later. After inspecting the front end of White's car with a flashlight, the officer asked White to accompany him to the police station. There White was informed that he was under arrest for violation of Section 480 of the California Vehicle Code, relating to the failure of the driver of a motor vehicle involved in an accident to stop immediately, render assistance, etc. On the following day White was released on bail.

White told the police that the damage to the front end of his car had been done at the Santa Anita race track as the result of insufficient parking space, and that he knew nothing of any accident, or "if there was anybody got killed."

At this juncture, we adopt, with certain amplications in the interest of clarity, a part of a "chronological table of events" contained in Standard's brief:

July 22, 1946—Fitzgerald et al. v. White et al., is filed in the San Diego County Superior Court, being a damage suit arising out of the death of the two pedestrians killed in the accident.

Oral statement by White, given to the appellant's claim manager and the appel-

lant's attorney, to the effect that White had not been in an accident, had not struck any one, and had **not** known anything about the accident; and that his automobile had been damaged at the Inglewood race track. The court itself specifically found that White first reported to the appellant "that he had not been involved in any accident."

July 23, 1946—The insured automobile is examined by the appellant's attorney and the appellant's claim manager, and the inquest is attended by them.

White's sworn statement is taken by the appellant's representatives. In that statement, White repeatedly denies having been in any automobile accident during his trip from Los Angeles to San Diego, on July 20, 1946. Seven of these denials are unqualified: three are modified by the phrase, "Not that I know of". This sworn statement, according to the claim manager, "was in substance and effect the same statement" as that given by White the day before.

Later the same day, White informs the appellant's attorney that he had fallen asleep and the accident may have happened then.

July 24, 1946—The claim manager interviews witnesses near the scene of the accident and is informed by the appellant's attorney that the automobile had human blood and flesh on it.

July 26, 1946—William W. Harper, consulting physicist, is employed by the appellant "to determine the extent of the physical damage, and then at that time to determine whether or not the car had collided with some fixed object or with another vehicle, or with human beings."

White informs the appellant's representative that he thinks he is going to plead guilty to violating § 480, supra, adding "I can't tell you why," according to the testimony of the claim agent.

July 29, 1946—White's attorney in the criminal case informs the appellant's attorney as to the reasons for White's plea of guilty. The appellant's attorney expresses the wish that the plea of guilty be not entered for White, but White's lawyer is obdurate.

July 31, 1946—White pleads guilty.

August 6, 1946—Lee v. White is filed in the San Diego court. See the first paragraph of this chronology.

August 15, 1946—Answers to Superior Court actions against White, *denying* that White was involved in an accident, are prepared by the appellant's attorney and sent to White for verification.

August 23, 1946—Answers *admitting* that White was involved in the accident are sent to the appellant's attorney and thereafter filed by him. Shortly afterward, the appellant's attorney withdraws as attorney for White.

August 26, 1946—The appellant denies liability in both civil cases against White.

### 3. The Weight to Be Given to the Judge's Findings

The appellant's attack upon the judgment below is based upon the contention that the lower court erred in finding that White "has at all times co-operated" with the appellant in the investigation of the accident and in the defense of the actions against him in the state court. White's lack of co-operation, the appellant argues, consists of "false, misleading or inconsistent" statements of facts in reporting the accident. The claim is also made that the court erred in finding that the appellant "has not been in anywise prejudiced by any action or statement or omission of George White."

Now, there is no serious dispute as to the nature of the five separate and distinct statements made by White regarding the accident.

The first was made to the police, and White's own version of what he told the arresting officer regarding his lack of knowledge of any accident agrees with that given by the police.

The second statement was given orally to the appellant's representatives, and the testimony as to what that statement was is not disputed. Indeed, Standard cites the claim manager's testimony alone as the basis for the section of the "chronological table" which relates to this point.

White's third statement, given under oath, was taken down by an official court

reporter, and is part of the documentary evidence now before this court.

White's fourth statement, given to the appellant's attorney in the afternoon of July 23, 1946, was, according to White's testimony, that "if that is the car that hit them, it must have happened when I fell asleep." The court found that White had reported to the appellant "after the 23d day of July, 1946, and prior to the 31st day of July 1946, * * * that he had fallen asleep * * * and that the accident * * * must have happened at that time." While we believe that the court made a slight error in finding that White reported this to the appellant "after" instead of "on" July 23, 1946, for the purpose of this appeal we accept the finding as correct.

Finally, White's fifth statement was made in open court, when he pleaded guilty to violating § 480, supra.

■ From the foregoing, it will be seen that the *fact* that White's five statements were made is not disputed. The court found, however, that the appellant "has not been in anywise prejudiced by any action or statement or omission of George White." This is a conclusion of law, or, at most, an inference from undisputed facts, which we are in as good a position to make as was the trial court.

In United States v. United States Gypsum Company, 68 S.Ct. 525, at page 541 the Supreme Court, in dealing with a situation comparable to that which confronts us here, said:

"Insofar as this finding and others to which we shall refer are inferences drawn from documents or undisputed facts, heretofore described or set out, Rule 52(a) of the Rules of Civil Procedure [28 U.S.C.A. following section 723c] is applicable. That rule prescribes that findings of fact in actions tried without a jury 'shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' It was intended, in all actions tried upon the facts without a jury, to make applicable the then prevailing equity practice. Since judicial review of findings of trial courts does not have the statutory or constitutional limitations of findings by administrative agencies or by a jury, this Court may reverse findings of fact by a trial court where 'clearly erroneous'. The practice in equity prior to the present Rules of Civil Procedure was that the findings of the trial court, when dependent upon oral testimony where the candor and credibility of the witnesses would best be judged, had great weight with the appellate court. The findings were never conclusive, however. A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. * * *

"Despite the opportunity of the trial court to appraise the credibility of the witnesses, we cannot under the circumstances of this case rule otherwise than that Finding 118 is clearly erroneous."[1]

### 4. The Rule of Construction

■ The ancient rule that all intendments in an insurance policy are to be construed favorably to the insured has one important limitation; namely, that where the language of any given provision of the policy is clear, that language must be followed. In other words, where there is no ambiguity, there is nothing left to be construed. In such a situation, when a party seeks to read something into the contract of insurance that is not there, a court must perforce say, with Shylock,—

"Is it so nominated in the bond? * * * I cannot find it; 'tis not in the bond."

This is the teaching of the cases in California and elsewhere. In Carabelli v. Mountain States Life Ins. Co., 8 Cal. App.2d 115, 117, 118, 46 P.2d 1004, 1006, hearing denied by the Supreme Court of the State, the court said:

"The general rule is that an insured must bring himself within the express

[1] See also Western Union Telegraph Co. v. Bromberg, 9 Cir., 143 F.2d 288, 290; State Farm Mut. Automobile Ins. Co. v. Bonacci, 8 Cir., 111 F.2d 412, 414, 415; Aetna Life Ins. Co. v. Kepler, 8 Cir., 116 F.2d 1, 4, 5; Kuhn v. Princess Lida of Thurn & Taxis, 3 Cir., 119 F.2d 704, 705, 706.

terms of the policy before he is entitled to recover thereon, and where these terms are plain and explicit, the courts cannot create a new contract for the parties by a forced construction of such plain and explicit terms. Thus the rule of liberal construction in favor of the insured can only have application when the policy presents some uncertainty or ambiguity. [Cases cited]"

The same doctrine has been recognized by this court. In Fidelity Union Fire Ins. Co. v. Kelleher, 9 cir., 13 F.2d 745, 746, Judge Hunt said:

"Following the steadily adhered to decisions of the Supreme Court, it is seen that the present case is directly within the well settled rule of the federal courts, that the terms of the policy are the measure of the liability of the insurer, and that, to recover, the insured must prove that he is within those terms. In Imperial Fire Ins. Co. v. Coos County, 151 U.S. 452, 14 S.Ct. 379, 38 L.Ed. 231, the court said: 'It is immaterial to consider the reasons for the conditions or provisions on which the contract is made to terminate, or any other provision of the policy which has been accepted and agreed upon. It is enough that the parties have made certain terms, conditions on which their contract shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consists simply in enforcing and carrying out the one actually made.' " [2]

### 5. What Constitutes Co-operation

As we have seen, the appellant's policy provides that "the insured shall co-operate with the company * * * and shall assist in * * * securing and giving evidence * * *." At the outset of our inquiry into the question of whether or not White "co-operated" with the appellant, it is necessary to ascertain what, in the eyes of the law, is regarded as "co-operation" on the part of an insured.

Truthfulness seems to be the keystone of the co-operation arch. The insured must tell his insurer the complete truth concerning the accident, *and he must stick to this truthful version throughout the proceedings.* He must not embarrass or cripple his insurer in its defense against a civil suit arising out of the accident, by switching from one version to another. He must not blow hot and cold to suit his personal convenience.

In Valladao v. Fireman's Fund Indemnity Co., 13 Cal.2d 322, 328, 329, 333, 89 P. 2d 643, 646 the court said:

"It may not be denied that aside from the obligation arising from the law of contract, a condition of a policy requiring the cooperation and assistance of the assured in opposing a claim or an action lodged against him by an injured person is material to the risk and of the utmost importance in a practical sense. Without such cooperation and assistance the insurer is severely handicapped and may in some instances be absolutely precluded from advancing any defense.

\*     \*     \*     \*     \*     \*

"The matter is aptly summed up in a memorandum opinion filed by the trial court * * *:

"'* * * A co-operation clause binds the insured to the exercise of good faith and when he speaks concerning the facts of the accident it must be to tell the truth. To wilfully misstate or conceal facts in such a case is clearly not cooperation or assistance; it is exactly the opposite.' " [3]

Such, too, is the view of the Federal courts. In Buffalo v. United States Fidelity & Guaranty Co., 10 Cir., 84 F.2d 883, 885, the court used the following language, which was quoted, with approval by the California Supreme Court in the Valladao case, supra:

"The company is entitled, however, to an honest statement by the insured of the pertinent circumstances surrounding the

---

[2] See also Royal Indemnity Co. v. Watson, 5 Cir., 61 F.2d 614, 616. Cf. California Western States Life Ins. Co. v. Vaughn, 9 Cir., 165 F.2d 945, 954.

[3] See also Margellini v. Pacific Automobile Ins. Co., 33 Cal.App.2d 93, 99, 91 P.2d 136, application for hearing denied by the Supreme Court of the State; Wright v. Farmers Automobile Inter-Insurance Exchange, 39 Cal.App.2d 70, 74, 75, 102 P.2d 352, petition for hearing denied.

accident, as he remembers them. Lacking that, the company is deprived of the opportunity to negotiate a settlement, or to defend upon the solid ground of fact. *Nothing is more dangerous than a client who deliberately falsifies the facts."* [Emphasis supplied][4]

### 6. The Legal Effect of the Lack of Co-operation

As was pointed out in the Valladao case, supra, 13 Cal.(2d) at page 331, 89 P.2d at page 647, "Whether it is indispensable that an insurer make a showing of prejudice resulting from breach of a cooperation clause in order to relieve itself from liability for an accident, is a question upon which there is an absence of unanimity". On the same page of the Valladao opinion, the Supreme Court specifically refrained from expressing its views on that subject:

"We do not find it necessary to here definitely determine whether the insurer must make such a showing of prejudice."

We therefore must look elsewhere for an answer to the question.

In Royal Indemnity Co. v. Morris, 9 Cir., 37 F.2d 90, 92, the late Judge Dietrich said:

"Appellee argues that, notwithstanding Gomez's refusal to defend, the insurance company might have protected itself by intervention. But while intervention might have afforded it a measure of protection, clearly in that position it would be at a disadvantage; *and, besides, we are here discussing, not the question whether in spite of Gomez's default the insurance company could have protected itself, but whether he forfeited his rights by violating a material condition of the policy."* [Emphasis supplied][5]

Perhaps the leading case on this subject is Coleman v. New Amsterdam Casualty Co., supra, 247 N.Y. 271, 160 N.E. 367, at page 369, 72 A.L.R. 1443. In that case, Chief Judge Cardozo said:

"The plaintiff makes the point that the default should be condoned, since there is no evidence that co-operation, however willing, would have defeated the claim for damages or diminished its extent. For all that appears, the insurer would be no better off if the assured had kept its covenant, and made disclosure full and free. The argument misconceives the effect of a refusal. Co-operation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end, if the insurer so elected. The case is not one of the breach of a mere covenant, where the consequences may vary with the fluctuations of the damage. There has been a failure to fulfill a condition upon which obligation is dependent."[6]

From the foregoing, therefore, it will be seen that there is impressive authority for the proposition that an insurer need not show that it has been prejudiced by the insured's lack of co-operation. If the terms of the policy are plain, most courts hold that the insured's breach of the co-operation clause ipso facto relieves the insurer of liability.

It is not necessary, however, for us to adopt this somewhat strict rule of construction. Other considerations compel us to the conclusion that the insurer cannot be held liable in the instant case.

### 7. White's Inconsistent Statements were Prejudicial to the Appellant

██ As we have seen, White made at least five separate statements regarding the

---

[4] See also United States Fidelity & Guaranty Co. v. Wyer, 10 Cir., 60 F.2d 856, 858, certiorari denied, 287 U.S. 647, 53 S.Ct. 93, 77 L.Ed. 560; General Casualty & Surety Co. v. Kierstead, 8 Cir., 67 F.2d 523, 525; Ohio Casualty Co. v. Swan, 8 Cir., 89 F.2d 719, 724; State Farm Mut. Automobile Ins. Co. v. Bonacci, supra, 8 Cir., 111 F.2d at pages 414 and 420. Cf. Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 369, 72 A.L.R. 1443.

[5] See also New Jersey Fidelity & Plate Glass Ins. Co. v. Love, 4 Cir., 43 F.2d 82, 85, 86, where many authorities are cited; General Casualty & Surety Co. v. Kierstead, supra, 8 Cir., 67 F.2d at page 525; Storer v. Ocean Accident & Guarantee Corporation, 6 Cir., 80 F.2d 470, 472; State Farm Mut. Automobile Ins. Co. v. Bonacci, supra, 8 Cir., 111 F.2d at page 414.

[6] See also Conold v. Stern, 138 Ohio St. 352, 35 N.E.2d 133, 137, 138, 137 A.L.R. 1003; Bachhuber v. Boosalis, 200 Wis. 574, 229 N.W. 117, 118.

accident. Those statements embodied four varying versions regarding his responsibility for the death of the two pedestrians:

(1) White had not been in any accident.

(2) White had not been in any accident *that he knew of*.

(3) The accident "must have happened" while he was asleep.

(4) White was guilty of the crime of "hit-and-run" in connection with the accident.

Standard seeks to brush aside the appellant's effort to show "imaginary" inconsistencies in White's statements. The court below found that there were no inconsistent statements of fact made by White in reporting the accident to the appellant; that the appellant has not been "in anywise prejudiced" by any statement made by White; and that White has "never retracted" the statement that "by reason of falling asleep he did not know that said accident had occurred."

We do not agree with any of the foregoing propositions.

The inconsistencies lurking in White's four versions of the accident are not "imaginary", but real. They reflect the progressive disintegration in the self-assurance of White as he found himself caught in "the web of circumstance". First, he attempted to "brazen it out" with the police by denying that he had been in any accident at all, and blaming the damage to his automobile first on one race track and then on another. Then, as the net closed around him, White modified his denial by adding "that I know of". Confronted by the tell-tale photographs of his car, showing human blood and flesh on it, White told the appellant's attorney that the accident must have happened while he was asleep. Finally, when the net became too tight for comfort, White decided to make a clean breast of it, and he pleaded guilty to being a hit-runner.

It is somewhat difficult to believe that any sober man, even while asleep at the wheel, would not know that he had struck two pedestrians with such force as to send their bodies hurtling through the air and cause them to land 60 or 80 feet from the point of impact. And the evidence is undisputed that White was sober when the accident occurred.

One wonders, too, why White did not tell the appellant's representatives immediately that he had fallen asleep at the wheel. White explained that (1) he "didn't think of it" and that (2) he "was quite sure that it was unimportant."

One can well wonder, with the appellant, just what White *would* have considered important in narrating the facts to his insurance company!

While on the witness stand in the court below, White adhered to his Version No. 3; namely, that he must have been "unconscious or asleep" when the accident occurred. And to this day, in its brief before this court, Standard insists that Version No. 3 is the true one, explaining that White pleaded guilty to the hit-and-run charge so that he could get a dismissal of the manslaughter charge, and for other reasons.

If, however, we accept the postulate that White *was* asleep when the accident occurred, we find Standard on the other horn of the dilemma. If White was not conscious that an accident occurred, he pleaded guilty to a crime that he did not commit. Standard concedes—as indeed it must—that "knowledge that an accident had occurred was an essential to the crime to which he had pleaded guilty".

By pleading guilty, when he was not in fact guilty, White seriously crippled the appellant's possible defense on White's behalf in the civil actions brought against him in the state court.

When one considers this prejudicial welter of inconsistencies, it is impossible to spell out co-operation on White's part.

In the Valladao case, supra, which is the leading decision in California on the subject, the court stressed the devastating effect that an insured's inconsistent statements have upon the insurer's defense of suits brought against the insured under the policy. At page 334 of 13 Cal.2d at page 649, 89 P.2d of the opinion it was said:

"The false statements had been made to the traffic officer, the investigator and others. *A false plea had been entered before the justice* and a false writing subscribed as a report. When the true facts were dis-

closed, the company had to exactly reverse its position with regard to essential facts and virtually proclaim their parties and chief witnesses to be liars and wholly unworthy of belief. Practically its only props were struck from under it. * * *

"Moreover, had the insurer proceeded to defend on behalf of its assured, *it faced the spectre of having its principal witnesses denounced in open court as perjurers in view of the 'about-face' in their stories,* reflected in the original actions by two verified but inconsistent and contradictory answers to the complaints of the respective injured persons." [Emphasis supplied]

The impeachment of a witness by confronting him with previous inconsistent statements is not only a well-recognized rule in the general law of evidence, but it is specifically provided for by statute in California. Section 2052 of the Code of Civil Procedure reads as follows:

"A witness may also be impeached by evidence that he has made, at other times, statements inconsistent, with his present testimony; but before this can be done the statements must be related to him, with the circumstances of times, places, and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them."

Furthermore, it is well settled in California that a plea of guilty may be used as evidence against the same defendant in a civil case. In Langensand v. Obert, 129 Cal.App. 214, 218, 18 P.2d 725, 727, the court said:

"An exception to the rule that a judgment in a criminal prosecution cannot be received in a civil action to establish the truth of the facts in which it was rendered has been held to arise where the defendant in the criminal case pleaded guilty, and the record showing such plea is offered in a civil action against him growing out of the same offense, such a record being admitted not as a judgment establishing the fact, but as the deliberate declaration or admission against interest that the fact is so; *in other words, a solemn confession of the very matter charged in the civil action.* [Authorities cited]" [Emphasis supplied]

In Seltzer v. Indemnity Ins. Co. of North America, 252 N.Y. 330, 169 N.E. 403, 404, the Court of Appeals of New York said:

"After the commencement of the actions by his friends and associates, through his own attorneys, he [Jacob Wasserman] made an affidavit for the insurance company which was the reason for its defending the claims. The negligence charged against Wasserman was fast driving. In this affidavit he swore that he did not drive faster than 25 miles an hour and that no one in the car complained to him about driving too fast or asked him to drive slower; no remarks were made to him whatever about driving. This was important evidence bearing upon both the question of negligence and of contributory negligence of the plaintiffs. [Case cited]

"As the time of the trial drew near, Jacob Wasserman suddenly lost his memory. He could not recollect how fast he was driving and he could not recollect whether the people in the car had warned him or not. The investigator preparing the case for the company interviewed him in the courtroom during the trial preparatory to calling him in as a witness. His statement then was that he could not remember. The defendant did not call him on the trial of the negligence cases because of this failing memory. *Who can tell whether Jacob Wasserman was telling the truth when he made the affidavit or when he said at the time of the trial that he could not remember.* A failing memory may be a false excuse as well as a true one. A witness has been sent to jail for perjury who falsely testified to loss of memory. [Case cited]"

In the instant case, we too may well ask: Which of White's four versions of the accident was the true one? It is important to remember that:

(1) He told the police and appellant's representatives that he had been in no accident;

(2) He told appellant's representatives that he had been in no accident *that he knew of;*

(3) He told appellant's representatives that his automobile must have killed the two pedestrians while he was asleep;

(4) He told the court, in a formal plea of guilty, that he was a hit-and-run driver.

We do not believe that any practicing attorney in any state, confronted with these four various versions on the part of his client, would consider that the latter was "co-operating"![7]

In such a situation, the appellant was within its rights in withdrawing from the defense of the civil cases against White. The version that White insisted was the true one when he testified in the court below, and which Standard declares is the true one in its brief before this court, is one that White's lawyer in the criminal case said was "very hard to believe" and one that he was "quite sure" a jury would not believe. This fact was brought out by the various appellees' own witnesses. The assistant probation officer of San Diego county, who investigated White's case, likewise found Version No. 3 hard to believe.

The appellant therefore was justified in withdrawing from the defense of White's civil cases. Section 6068 of the Business and Professions Code of California provides in part as follows:

"§ 6068. *Duties as an attorney.* It is the duty of an attorney:

\* \* \* \* \* \*

"(c) To counsel or maintain such actions, proceedings or defenses only as appear to him legal or just, \* \* \*."

Finally, we believe that definite and affirmative proof of White's lack of co-operation can further be found in the words of White's attorney in the criminal case. When the appellant's attorney requested White's lawyer not to enter a plea of guilty for his client, the latter attorney, according to his own testimony while on the stand for Standard, replied:

"I do appreciate your co-operating with me and giving me evidence up to now, but I can't go with you any further. *We have come to a fork in the road.* I have to pro-

tect this man's liberty and do the best I can for him.

\* \* \* \* \* \*

"I have to use my own judgment, *and you take your end of it, and I take care of mine.*"

White himself was "convinced" by his attorney, and agreed to plead guilty.

In all this, we find little that savors of co-operation. As far as the insured and his attorney were concerned, it was a case of "Every man for himself"!

### 8. We Cannot Speculate as to What the Appellant Could Have Done Had White Told the Truth Immediately

In its brief, Standard asks the following rhetorical question:

"Would its [the appellant's] opportunity to investigate and dispose of the claims have been better if White had told a representative of appellant the first time he talked to him that he may have fallen asleep and the accident may have occurred at that time, although he knew none of the facts of the accident?"

This is precisely the question that we are not permitted to ask in a case of this kind. In the Valladao opinion, 13 Cal.2d at page 336, 89 P.2d at page 656, Chief Justice Waste said:

"Nor do we think that preliminary reports of the insurer's investigator's tending to indicate a possible lack of defense on the merits to an injured person's claim, precludes [sic] the insurer from availing itself of a defense based on a substantial breach of the cooperation clause. We are not now in a position to conjecture as to what settlement or defense on the merits the insurer may have worked out had it been originally fully and truthfully advised by the assured and had it not been forced to withdraw because of its assured's false statements."

In Seltzer v. Indemnity Ins. Co., supra, 252 N.Y. 330, 169 N.E. at page 404, the court said:

"The testimony of Wasserman, if given according to his affidavit, was at least ma-

---

[7] See Storer v. Ocean Accident & Guarantee Corporation, supra, 6 Cir., 80 F.2d at page 472.

terial on the trial of the negligence cases. It might have helped the defendant and the insurance company, and again it might not have been of any avail. This, however, is not the point. The insurance company was entitled to the defendant's assistance and to a truthful statement of the cause of the accident."

### 9. When the Co-operation Clause is a Condition Precedent No Prejudice Need Be Shown

The appellant's policy specifies that "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy". There is nothing contrary to public policy in this provision, and it should be enforced according to its terms.

Under the Civil Code of California, a condition precedent is given the same force as that indicated in the policy that we are now considering. Section 1439 provides in part:

"Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself; * * *."

In our opinion, the law governing conditions precedent in insurance contracts is correctly stated in Whittle v. Associated Indemnity Corporation, 130 N.J.L. 576, 33 A.2d 866, 868, 869, in which there was considered a policy having a clause in identically the same language as that quoted above. There the Court of Errors and Appeals said:

"These conditions are not, as urged, conditions subsequent. * * * In the case at bar the stated conditions by the very terms of the policy (Condition 10) are made conditions precedent. * * * Moreover, we have held that they are 'conditions in the nature of a promissory warranty,' and that they are 'conditions precedent to the right of recovery.'

* * * * * *

"And if the test were that it must be shown that the failure to fulfill the conditions precedent prejudiced the insurer, the trial judge might well have been justified, under the proofs, in submitting the case to the jury. But that is not the test. The test is: Was a condition precedent of the policy unfulfilled by the assured? If it was then, if the insurer so chooses and it did so choose, the policy is at an end * * *, for 'there has been a failure to fulfill a condition upon which (insurer's) obligation is dependent.' Coleman v. New Amsterdam Casualty Co. [supra].

"The 'construction and effect of a written instrument is a matter of law to be determined by the court and not by the trier of fact.' And in the absence of an infirmity in a contract (none is here alleged) our 'function' is to 'enforce a contract as it is written'. And if the 'insured cannot bring himself within the conditions of the policy, he is not entitled to recover for the loss.' * * * In short, the law does not make a better contract for the parties than they chose to make for themselves. [Case cited]"

In the instant case, the "insured cannot bring himself within the conditions of the policy". Accordingly, we hold that "no action shall lie against the company".

### 10. The Plaintiffs in the Suits Against White Stand in His Shoes Quoad the Policy

The two civil actions against White filed in the state court have been brought by the heirs of the pedestrians killed by White's car. The appellant's liability for the amount of any judgments that might be rendered in those suits depends, of course upon what rights White himself has under the policy.

It has been suggested that it would be a hardship on the plaintiffs in the state suits to deprive them, because of White's lack of co-operation, of the benefits that they might otherwise have derived under the appellant's policy.

The hardship, however, is more apparent than real. White's policy with the appellant, had it been enforceable, would have been a sheer windfall for the plaintiffs in the state actions. They are not out of pocket as a result of the policy. They have

930

paid no premiums. The tort for which they are suing, if any tort has been committed, is one of which White and not the appellant is the perpetrator.

As was well said in Royal Indemnity Co. v. Watson, supra, 5 Cir., 61 F.2d at page 616, likewise an automobile liability insurance case:

"The contract of insurance was issued for the protection of assured against loss; it was not designed for the protection of strangers. An injured person needs no protection against an assured who is solvent."

Quite apart from considerations of sympathy or good morals, however, it is well settled in the law that "in an action of this character the injured person stands in no better position than the assured and that a violation by the latter of a cooperation clause which would serve to preclude the assured from indemnity under his policy will likewise bar the injured person from recovering against the insurer should the judgment in his favor and against the assured remain unsatisfied." The Valladao case, supra, 13 Cal.2d at page 328, 89 P.2d at page 646.[8]

### 11. Conclusion

█ The learned District Judge found that White did not "make any false, conflicting, misleading or inconsistent statements of fact" in reporting the accident to the appellant; that the appellant "has not been in anywise prejudiced by any action or statement or omission" of White; and that, having assumed the defense of the state court actions, the appellant has the duty "to attempt to establish the truth of the statement of George White, that he was asleep and did not know that the accident occurred, so long as said George White maintains that said statement is true," etc.

The first two of these findings are inferences from undisputed testimony or documentary evidence, from which we are in as good a position to draw deductions as was the court below. The third "finding of fact" is in reality a pure conclusion of law.

Believing that all three of the above holdings are "clearly erroneous", we are compelled to the conclusion that the judgment based thereon cannot stand.

Accordingly, the judgment is reversed.

---

[8] See also Royal Indemnity Co. v. Morris, supra, 9 Cir., 37 F.2d at page 92; Fireman's Fund Indemnity Co. v. Kennedy, 9 Cir., 97 F.2d 882, 884; Royal Indemnity Co. v. Watson, supra, 5 Cir., 61 F.2d at page 616; General Casualty & Surety Co. v. Kierstead, 8 Cir., supra, 67 F.2d at page 525; Summers v. Travelers Ins. Co., 8 Cir., 109 F.2d 845, 848, 127 A.L.R. 1336; State Farm Mut. Automobile Ins. Co. v. Bonacci, supra, 8 Cir., 111 F.2d at page 419; Seltzer v. Indemnity Ins. Co., supra, 252 N.Y. 330, 169 N.E. at pages 403, 404; Conold v. Stern, supra, 138 Ohio St. 352, 35 N.E.2d at pages 137, 138; Whittle v. Associated Indemnity Corporation, supra, 130 N.J.L. 576, 33 A.2d at page 868.