**GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, Plaintiff,**

v.

**Carl E. DENNIS, Avanell S. Dennis, Carl R. Holland, Nancy Holland, Defendants.**

**Civ. A. No. 4140.**

United States District Court
W. D. Kentucky,
at Louisville.

Feb. 21, 1962.

James G. Bowman, Louisville, Ky., for plaintiff.

W. W. Evans, Louisville, Ky., for defendants Carl R. Holland and Nancy Holland.

SHELBOURNE, District Judge.

This action was brought in this Court by the plaintiff, Great American Insurance Company of New York (hereinafter referred to as Great American), pursuant to Section 2201 of Title 28 United States Code. The prayer of the complaint is for a judgment declaring that plaintiff is no longer obligated to defend an action brought in Jefferson Circuit Court and that it has no liability to pay any judgment that might be rendered therein.

February 4, 1960, plaintiff issued a policy of automobile liability insurance, No. VF 916–10–02, insuring Carl E. Dennis and his wife, Avanell S. Dennis, against bodily injury and property damage liability resulting from the operation of a 1960 Mercury automobile owned by Avanell S. Dennis. The total liability of the plaintiff under the policy was limited to $10,000.00 for injuries to or death or one person, $20,000.00 for injuries to or death of more than one person, and $5,000.00 for property damage. The policy contained the following conditions:

"5. Assistance and Cooperation of the Insured—Parts I, III, and IV. The insured shall cooperate with the company and, upon the company's request, attend hearing and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceeding in connection with the subject matter of this insurance * * *

"6. Action Against Company— Part I. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

In action No. CR 54177 now pending in Jefferson Circuit Court Carl R. Holland and Nancy Holland, his wife, are plaintiffs and Carl E. Dennis and Avanell S. Dennis, his wife, are defendants, all of whom are named defendants in the action in this Court. The complaint in that action was filed on December 7, 1960, alleging that on October 2, 1960, Carl E. Dennis negligently and carelessly operated the 1960 Mercury automobile owned by Avanell S. Dennis and caused it to collide with the automobile owned and operated by Carl R. Holland. The complaint seeks

a judgment of $31,200.00 for Mr. Holland and $31,000.00 for Mrs. Holland as damages arising out of the accident. Timely notice of the suit was given to Great American by the Dennises and it undertook the defense of the suit on behalf of its insureds. An investigation of the facts and circumstances surrounding the accident was made and the suit for declaratory judgment in this Court is based upon the information obtained in that investigation.

The case was tried before this Court without the intervention of a jury on December 4, 1961, and briefed by counsel. From the testimony heard and the pleadings and exhibits filed, the Court makes the following:

## FINDINGS OF FACT

(1) October 2, 1960, a collision between a 1960 Mercury automobile, owned by Avanell S. Dennis, and a 1950 Ford automobile, owned and operated by Carl R. Holland, occurred at the intersection of Twenty-first and Duncan Streets in Louisville, Jefferson County, Kentucky.

(2) December 7, 1960, Carl R. Holland and Nancy Holland filed an action in Jefferson Circuit Court as plaintiffs against Carl E. Dennis and Avanell Dennis, defendants, seeking judgment for damages arising out of the accident on October 2, 1960.

(3) December 14, 1960, Carl E. Dennis gave a signed statement to Great American's claim manager, A. W. Herald, stating that he and his cousin, Robert Sadler, moved some furniture from Louisville to Bowling Green, Kentucky, on Sunday, October 2, 1960; that they left Louisville at approximately 11:00 A.M., on Sunday and did not return to Louisville until Monday afternoon. Dennis said that upon his return to Louisville his wife told him the 1960 Mercury had been stolen and she had notified the police, and that the car was recovered Monday night. He stated that he was subsequently cited to appear in Louisville Traffic Court on a "hit and run" charge, that he was identified by the Hollands as the driver of the 1960 Mercury which collided with their car on Sunday afternoon, October 2, 1960, and that he was found guilty of the charge.

(4) December 22, 1960, in a verified statement to James G. Bowman, attorney for Great American, Dennis recited that he helped Sadler move some furniture to Bowling Green for Arthur Frakes on October 2, 1960. He said that after unloading the furniture he and Sadler returned to the home of Sadler's mother at Big Clifty, Kentucky, where they spent the night. Dennis stated they left Big Clifty on the morning of October 3, 1960; that en route to Louisville they stopped at the home of his parents in Elizabethtown for a visit, and returned to Louisville "somewhere around 12 or 1 o'clock" Monday afternoon.

Robert Sadler was interrogated by Bowman on the same date and he corroborated Dennis's statements.

(5) December 22, 1960, counsel for Great American filed an answer to the suit against its insureds in the Jefferson Circuit Court, which permitted the company to introduce proof that Dennis was out of the city at the time of the accident.

(6) December 30, 1960, Great American's counsel took the depositions of Mr. and Mrs. Holland. Holland stated the circumstances surrounding the accident and described the driver of the car that struck his automobile. He then related how he and his wife identified Dennis as the driver of that car when they saw him at Louisville Police Headquarters. The statements of Mrs. Holland concerning these matters were in agreement with those of her husband.

(7) January 20, 1961, counsel for the Hollands took the depositions of Mr. and Mrs. Dennis, and Dennis reiterated his claim that he was in Bowling Green at the time of the accident.

(8) In a statement to a representative of Great American on February 9, 1961, Carl Dennis's mother and sister said that Dennis and Robert Sadler stopped for a visit in their home at Elizabethtown in October, 1960, but could not fix the specific day or date of the visit. A similar

statement was obtained from Sadler's mother on March 30, 1961, and she expressed the same uncertainty as to a specific day or date.

(9) May 10, 1961, Detective Fred King, a "hit and run" investigator for the Louisville Police Department, gave a verified statement to James G. Bowman relative to his investigation of the accident reported by the Hollands. When questioned concerning how the Hollands identified Carl E. Dennis as the driver of the car that struck them, King answered:

"Mr. and Mrs. Holland were asked to sit in the lobby of Police Headquarters and if they saw anyone come in the building that looked like the accused I would like them to let me know. Mrs. Holland came back and, to me pointed out the man in the lobby that that was the man who was driving the car at the time of the accident."

When asked what further steps he took after Mrs. Holland identified Carl E. Dennis, Detective King replied:

"I then told Mr. and Mrs. Holland to wait outside and talk to Carl Dennis and checking and found that he had no operator's license and asked him point blank is that the reason you left the scene of the accident because you didn't have any operator's license? And he said yes, they have been revoked about six months."

(10) May 11, 1961, the sworn statement of Arthur Frakes was taken and his responses to certain interrogatories propounded to him by A. W. Herald are as follows:

"Q. Have you heard any story or has anyone talked to you about Carl Dennis moving you and your family to Bowling Green, Kentucky?

"A. Yes.

"Q. Would you be good enough to tell us what that story is that you heard about?

"A. He wanted me to stay that he moved me to Bowling Green, Kentucky. I believe he said—now, let me—let's try to get that straight, the

date. I believe the 2nd day of August or something like that.

"Q. And did anyone say or tell you why they wanted you to say that he was in Bowling Green, Kentucky, on that day.

"A. Carl Dennis said that they were involved in a wreck somewhere or some way, and there was some women with them, and they didn't want their wives to get ahold of it, that is, that these women were in the car."

(11) May 13, 1961, Great American served notice that it was moving the Jefferson Circuit Court to continue action No. CR 54177 and remand it from the trial docket. The trial judge sustained the motion on May 15, 1961, on condition that an action for declaratory judgment be instituted in this Court within five days. The complaint in the instant action was filed May 17, 1961, and the case in the state court was continued and remanded from the trial docket.

(12) From the Hollands' indentification of Dennis as the driver of the 1960 Mercury automobile on October 2, 1960, Dennis's admission to Detective King that he left the scene of the accident because his operator's license had been revoked, the sworn statement of Arthur Frakes, and testimony heard at the trial, we find that the statements made by Dennis on December 14, 1960, December 22, 1960, and January 20, 1961, concerning his whereabouts during the afternoon of Sunday, October 2, 1960, were false. This finding is supported by the failure of Robert Sadler, a cousin of Dennis and his principal witness, to appear in response to a subpoena for his attendance at the trial in this Court on December 4, 1961.

CONCLUSIONS OF LAW

Plaintiff contends that one of the provisions of its policy issued to defendants Carl E. Dennis and Avanell S. Dennis required them to cooperate with plaintiff in defending any action which might be brought against them under the terms of the policy, such as the suit now pending

in Jefferson Circuit Court. It contends that Dennis's alleged false statements concerning his part in the accident have breached the cooperation clause of its policy, therefore, the policy is vitiated and plaintiff is relieved from defending the tort action now pending against its insureds and from all liability under the policy.

Defendants Carl R. Holland and Nancy Holland contend that the factual question of the veracity of Dennis's statements as to his whereabouts on October 2, 1960, and the question of his negligence if he was driving the 1960 Mercury automobile at the time of the accident are matters to be determined by the jury in the action filed in Jefferson Circuit Court. In the language of these defendants, their contention is:

> "If there was not an issue of fact to be decided as to whether or not Carl Dennis was driving the car, then this court would have the power to make a decision in this case and to either grant the relief the plaintiff seeks or to deny it. However, since there is a question of fact to be determined by the jury of the Jefferson Circuit Court, this is not a definite and concrete situation."

The cases of Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 and Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, are cited in support of the above contention. However, the following language of the Supreme Court in the Haworth case, at page 242, 57 S.Ct. at page 465, does not lend support to this contention:

> "That the dispute turns upon a question of fact does not withdraw it, as the respondent seems to contend, from judicial cognizance. The legal consequences flow from the facts and it is the province of the courts to ascertain and find the facts in order to determine the legal consequences. That is every day practice."

In Maryland Casualty Co. v. Pacific Coal & Oil Co., supra, the claimant, Or-

teca, demurred to the complaint of the insurance company in its suit for a declaration of rights on the ground that it did not state a cause of action against him. The Court of Appeals for the Sixth Circuit sustained the demurrer, and 312 U.S. at page 274, 61 S.Ct. at page 512, of its opinion reversing that decision the Supreme Court said:

> "It is clear that there is an actual controversy between the petitioner and the insured. Compare Aetna Life Ins. Co. v. Haworth, supra. If we held contrariwise as to Orteca because, as to him, the controversy were yet too remote, it is possible that opposite interpretations of the policy might be announced by the federal and state courts. For the federal court, in a judgment not binding on Orteca, might determine that petitioner was not obligated under the policy, while the state court, in a supplemental proceeding by Orteca against petitioner, might conclude otherwise."

This language, applied to the case at bar, obviously implies that the Hollands are proper defendants in this suit for a declaration of rights, and does not support their contention that the state court action precludes this Court's deciding the question of Dennis's truthfulness. Therefore, a determination here of the question of veracity will be res adjudicata should the Hollands receive a judgment against the Dennises in state court and attempt later to enforce that judgment against Great American.

In its opinion overruling Orteca's demurrer in the Pacific Coal & Oil Co. case, the Supreme Court also cited Aetna Casualty & Surety Co. v. Yeatts (C.A. 4), 99 F.2d 665. The following language at page 670 of the Yeatts opinion supports the implication drawn above:

> "Moreover, as we have already shown, the suits respectively pending in the state and federal courts do not cover the same ground. The claimant is not a party to the insurance contract and is not now suing thereon, whereas the insurer

bases its suit on the provisions of the policy, *confines itself to the question of coverage* and does not ask the court to determine the validity of the claim of the administrator of the deceased woman against the physician. Obviously the existence of a controversy between the parties to the insurance policy should not preclude the injured party, a stranger to the contract, from pressing his claim against the insured with all diligence in the state court. Nor will such action on his part interfere with the proceedings in the federal court. *In short, each court may proceed with the case before it without reference to the other, except insofar as a prior decision in one tribunal may constitute res adjudicata on one or more questions involved in a subsequent trial in the other.*" (Emphasis added.)

The same rule is announced by the Court of Appeals for the Sixth Circuit in Maryland Casualty Co. v. Faulkner, 126 F.2d 175, 178:

> "We think that the motion to dismiss was erroneously granted. At the time the petition for declaratory relief was filed there was a suit pending in the state court, the result of which might ultimately impose an obligation upon the appellant. Other suits were imminent. The appellant was not a party defendant to such suits and the question of its responsibility, under the terms of its policy, could not therein be determined. An actual and present controversy, nevertheless, had arisen. (Citing Maryland Casualty Co. v. Pacific Coal & Oil Co., supra.)
>
> \* \* \* \* \* \*
>
> "A declaratory judgment proceeding which involves only the extent of coverage of an insurance policy and not the liability of the insured to the persons injured in the accident, will be entertained in the Federal Court, *and the insurer is entitled to have the extent of the coverage of its policy declared* in such a proceeding,

—other essentials of jurisdiction being present." (Emphasis added.)

As in the Faulkner case, the plaintiff in the case at bar was not a party defendant in the state court action. The amount in controversy is in excess of $10,000.00, exclusive of interest and costs, and diversity of citizenship exists between the plaintiff and each of the four defendants, therefore, the plaintiff is entitled to have the extent of the coverage of its policy determined by this Court pursuant to the Declaratory Judgments Act.

Dennis's false statements as to his whereabouts on the day of the accident obviously breached the cooperation clause set forth in plaintiff's policy of automobile liability insurance. The importance of the insured being truthful with his insurer is recited in Buffalo v. United States Fidelity & Guaranty Co. (C.A.10), 84 F.2d 883, 885, as follows:

> "The company is entitled, however, to an honest statement by the insured of the pertinent circumstances surrounding the accident, as he remembers them. Lacking that, the company is deprived of the opportunity to negotiate a settlement, or to defend upon the solid ground of fact. Nothing is more dangerous than a client who deliberately falsifies the facts."

To the same effect is Hall v. Preferred Acc. Ins. Co. of New York (C.A. 5), 204 F.2d 844, 140 A.L.R.2d 162.

Truthfulness is described as being "the keystone of the co-operation arch." Home Indemnity Co. of New York v. Standard Acc. Ins. Co. of Detroit (C.A. 9), 167 F.2d 919; Metropolitan Casualty Ins. Co. of New York v. Richardson (D.C. Ill.), 81 F.Supp. 310.

Once the cooperation clause was breached by the insured, the plaintiff could elect to treat the policy as at an end. See Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 72 A.L.R. 1443; Beam v. State Farm Mutual Automobile Insurance Co. (C.A.

6), 269 F.2d 151; American Automobile Ins. Co. v. Mack (D.C.Ky.), 34 F.Supp. 224; Home Indemnity Co. of New York v. Standard Acc. Ins. Co. of Detroit, supra.

 The Hollands concede that such is the rule in Kentucky, which is the applicable law in this case. However, they contend that the rule is otherwise when the rights of an injured party have intervened. They state that it would be a hardship to deprive them of the benefits that they might have otherwise received under plaintiff's policy because of the lack of cooperation on the part of Dennis. We reject this contention on the authority of Sun Indemnity Co. v. Dulaney, 264 Ky. 112, 89 S.W.2d 307, and Travelers Ins. Co. v. Boyd, 312 Ky. 527, 228 S.W.2d 421.

The argument of hardship was made and rejected in Home Indemnity Co. of New York v. Standard Acc. Ins. Co. of Detroit (C.A. 9), 167 F.2d 919, 929 and 930:

> "The hardship, however, is more apparent than real. White's policy with the appellant, had it been enforceable, would have been a sheer windfall for the plaintiffs in the state actions. They are not out of pocket as a result of the policy. They have paid no premiums. The tort for which they are suing, if any tort has been committed, is one of which White and not the appellant is the perpetrator."

 The Hollands argue that under Kentucky law the insurer may waive its right to cancel the policy upon a breach of a condition subsequent, citing United States Fidelity & Guaranty Co. v. Miller, 237 Ky. 43, 34 S.W.2d 938, 76 A.L.R. 12, and American Casualty Co. v. Shely, 314 Ky. 80, 234 S.W.2d 303. The Kentucky rule as announced by these and other decisions was stated by the Court of Appeals for the Sixth Circuit, 269 F.2d at page 155 of its opinion in Beam v. State Farm Mutual Automobile Insurance Co., supra, as:

> "It is settled law in Kentucky that such a condition subsequent is for the benefit of the insurance company and may be waived by the party for whose benefit it is made; that the waiver of a forfeiture for breach of such a condition may result from any words or conduct of the insurer, *with knowledge of the facts which furnish the grounds of forfeiture*, that show a recognition of the continued existence of the insurance. Under this rule it has been held that the conduct of the insurance carrier in taking control of the litigation, *with knowledge of the existence of the very ground of forfeiture which it later attempts to assert*, and without reservation, constitutes an irrevocable waiver of the right to forfeit the indemnity contract upon that ground; that the waiver of a ground of forfeiture by treating the contract thereafter as a continuing obligation partakes of the principle of election, and, like an election, cannot be retracted; and that it is not essential to its application that prejudice results to the party in whose favor the waiver operates. (Citing cases.) In order to prevent the waiver from taking effect, it is necessary that the insurer promptly give unequivocal notice that it is defending the action under a reservation of all defenses which it may have by reason of the policy provisions. (Citing cases.)" (Emphasis added.)

Applying this clearly enunciated rule to the facts in the instant case, it is necessary for this Court to ascertain the time at which plaintiff "had knowledge of the facts which furnish the grounds of forfeiture."

The Hollands contend that plaintiff had such knowledge from the inception of the policy through its knowledge of Dennis's previous driving experiences, and that it waived its right to cancel the policy when it assumed defense of the state court action.

 The basis of the instant action is Dennis's failure to cooperate, therefore, the Holland's argument that plaintiff has waived its right to cancel the

policy by assuming defense of the action against Dennis in the state court is without merit. Moreover, Dennis's previous bad driving habits would not afford the plaintiff knowledge that he would not cooperate should a lawsuit be filed against him.

It cannot be said that plaintiff had knowledge of the grounds of this forfeiture by virtue of Dennis's admission on December 14, 1960, that he had been convicted on a "hit and run" charge in connection with the accident on October 2, 1960. He entered a plea of not guilty to that charge. Under the rule set forth by the Kentucky Court of Appeals in 1947, the judgment of the Louisville Police Court is not proof of the fact that Dennis was the driver of the car that collided with the Hollands' automobile on October 2, 1960. This rule as stated in Race v. Chappell, 304 Ky. 788, 202 S.W.2d 626, is:

> "Ordinarily a judgment in a criminal transaction cannot be received in a civil action to establish the truth of the facts on which it was rendered, but where the defendant in a criminal case pleaded guilty, and the record showing such a plea is offered in evidence in a civil action against him, growing out of the same offense, the judgment is admitted, not as a judgment establishing a fact, but as a declaration or admission against interest that the fact is so."

From the foregoing facts, the date of May 10, 1961, is determined as the time at which plaintiff first knew that Dennis had breached the cooperation clause by making false statements. On that date, Dennis admitted to Detective King that he was the driver of the car involved in the collision on October 2, 1960, but fled the scene of the accident because his operator's license had been revoked. The sworn statement given by Arthur Frakes on May 11, 1961, substantiated the fact that Dennis had been untruthful as to his whereabouts at the time of the accident throughout his insurer's defense of the state court action.

There is no evidence that plaintiff continued to defend Dennis in the state court action after it learned that Dennis had breached the cooperation clause of its policy. On May 13, 1961, plaintiff gave notice to all parties in the state court action that it was moving for a continuance of said action; May 15, 1961, its motion for continuance was sustained on condition that an action for declaratory judgment be instituted within five days, and May 17, 1961, such action was filed in this Court with all parties to the state court action named as defendants. This Court concludes that the aforementioned steps taken by the plaintiff constituted unequivocal notice of its disclaimer of liability under its policy issued to the Dennises. In this respect the case at bar is readily distinguished from the Miller, Shely and Beam cases.

The Court concludes that the plaintiff is entitled to a judgment in accordance with the prayer of its complaint herein and said judgment is this day entered.